# Wade, Appellant, *v.* Western Maryland Railroad Company.

*Negligence—Railroads—"Stop, look and listen"—Grade crossing— Right angle collision—Guest and driver—Nonsuit.*

Where one of two men borrows a wagon and the other a horse, and with the horse and wagon they set out on a joint expedition, the one who borrowed the wagon driving, the other is not the guest or passenger of the driver, and it is the duty of both men to stop the team, and look and listen before crossing a railroad.

Where two men driving a wagon are killed by a train at a grade crossing, the presumption that they stopped, looked and listened is rebutted by the testimony of the only witness who saw the accident, to the effect that he saw the team approaching the crossing at a dog trot, and that when it was about sixteen feet from where it was struck, traveling at the pace stated, he turned from where he was standing on his porch, and had stepped into the hallway about twelve feet, when he heard the crash of the collision.

Argued March 9, 1908. Appeal, No. 300, Jan. T., 1907, by plaintiff, from order of C. P. Franklin Co., Dec. T., 1906, No. 32, refusing to take off nonsuit in case of Hermie K. Wade v. The Western Maryland Railroad Company. Before FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Trespass to recover damages for the death of plaintiff's husband. Before GILLAN, P. J.

The opinion of the Supreme Court states the case.

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was the order of the court.

*Sharpe & Elder*, with them *J. A. Strite*, for appellants.

*O. C. Bowers*, with him *J. R. Ruthrauff*, for appellee.

OPINION BY MR. JUSTICE BROWN, April 20, 1908:

The appellant's husband and a man named Shindler, while attempting to cross the tracks of the Western Maryland Rail-

road Company in an open wagon, were struck by a passenger engine and instantly killed. The collision took place in the borough of Waynesboro, at the intersection of Second street with the roadbed of the appellee. The team was in the joint use and possession of the deceased at the time they were killed. The horse had been borrowed by Wade and the wagon by Shindler. With this team they started out three or four hours before they were killed to look for a horse of Shindler's that had strayed away. Immediately before the collision they stopped at a house where Wade got a rooster and Shindler a fish net. They then proceeded towards the railroad, Shindler driving, but there is nothing in the case to sustain the contention of the appellant that her husband was his guest or passenger, and the court below properly held that it was as much Wade's duty as Shindler's to stop the team and look and listen before crossing the railroad.

The collision occurred about six o'clock on the evening of April 24, 1906, when it was clear and calm, and there was nothing to interfere with seeing or hearing the approach of the train. Two switches connected with the main track near the point of the collision. The switch immediately next to the track did not extend to Second street, but the other or western one did, and was about fifteen or twenty feet from the track. On the first or western siding there were two gondola cars, and on the other there was a box car. The two gondola cars stood about flush with the south line of the street, and obstructed the view of the railroad from Second street to the south, the direction from which the train was coming, but, after passing them and the box car, there was a clear view of the track for at least a third of a mile.

Under the conditions as shown by the plaintiff, it is not disputed by her counsel that it was the duty of Shindler to stop, look and listen before crossing the tracks ; but, as stated, whatever duty was upon him rested equally upon his companion. Answer is made to this that, as it does not positively appear from the evidence that they did not stop, look and listen, the case ought to have gone to the jury on the presumption that they did. There is positive testimony, however, that they could not have stopped, looked and listened, and the only possible conclusion is that they had not. As but one inference could

have been drawn from the evidence on the question of the contributory negligence of the deceased, it was the duty of the court to draw it.

Leonard Johnson, the only witness called who saw the team approach the railroad, testified that he saw it turn from Ridge avenue on to Second street ; that it proceeded east on that street towards the railroad crossing on a dog trot ; that he saw it going at that pace until it reached the first switch or siding, about sixteen feet from where it was struck by the engine ; that when it was at that point, traveling at the pace stated, he turned from where he was standing on his porch and had stepped into the hallway, about twelve feet, when he heard the crash.   The testimony of Johnson completely overcomes the presumption that the deceased had exercised the care required of them when about to cross the railroad, and the learned trial judge, in refusing to take off the nonsuit, was constrained to say, " It is perfectly manifest, therefore, that they neither stopped, looked nor listened."   We can add nothing to this.

Judgment affirmed.